**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| SIERRA CLUB, et al., <br><br>       *Plaintiffs*, <br><br>   v. <br><br> NATIONAL MARINE FISHERIES SERVICE, et al., <br><br>       *Defendants*. | No. 8:24-cv-02699-TDC |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO AMEND
SCHEDULING ORDER AND EXPEDITE BRIEFING AND CONSIDERATION OF
MOTIONS FOR JUDGMENT ON THE RECORD**

**INTRODUCTION**

Plaintiffs Sierra Club, Center for Biological Diversity, Healthy Gulf, Texas Campaign for the Environment, and Turtle Island Restoration Network (collectively, "Plaintiffs") hereby move to amend the scheduling order and respectfully request that the Court expedite briefing and consideration of the parties' motions for judgment on the record.

This action challenges the National Marine Fisheries Service's ("Fisheries Service") issuance of a flawed biological opinion under the Endangered Species Act ("ESA") covering the construction, operation, and decommissioning of two unprecedented deepwater port crude oil export terminals: Sea Port Oil Terminal ("SPOT") and the Texas GulfLink Deepwater Port Project ("GulfLink"). Throughout most of this litigation, there has been no indication that construction on either of the terminals could or would occur in the foreseeable future, such that it would interfere with the timeline of this lawsuit. However, recent news reports and statements from counsel for Texas GulfLink, LLC now indicate that construction on the GulfLink terminal may start soon.

Although Plaintiffs do not know the exact timeline, it appears that construction on GulfLink will be moving ahead. Plaintiffs will be prejudiced by construction activities occurring prior to a court ruling on the validity of the biological opinion and accompanying incidental take statement because Plaintiffs, and the public, have a strong interest in ensuring that the project does not jeopardize endangered and threatened species or adversely modify their critical habitat in the Gulf of Mexico. Plaintiffs' requested relief—vacatur of the biological opinion—would lead to proper determinations on the project's effects on species, as well as appropriate mitigation to protect imperiled whales, sea turtles, and corals from harm. Resolving this dispute on an expedited timeline would also benefit other parties by defining clear legal requirements for the biological opinion and allowing parties to ensure protection of ESA-listed species from activities conducted under the project. Thus, good cause exists to expedite briefing and consideration of the merits to

obtain full relief. Plaintiffs therefore respectfully request that the Court:

- Issue a decision on Plaintiffs' pending motion to complete or supplement the record on or prior to July 31, 2026;

- Order Defendants to complete and/or supplement the record by August 14, 2026;[1]

- Order Plaintiffs to file their Motion for Judgment on the Record by August 24, 2026;

- Order Defendants to file their memorandum in opposition to Plaintiffs' Motion for Judgment on the Record and Cross Motion for Judgment on the Record by September 14, 2026;

- Order Plaintiffs to file their reply brief by September 28, 2026; and

- Issue a decision on the parties' Motions for Judgment on the Record as soon as practicable, within 75 days after Plaintiffs' reply brief is filed.

Plaintiffs have conferred with counsel for Defendants regarding this motion. Counsel for Defendants has indicated that Defendants oppose this motion and intend to file an opposition.

## BACKGROUND

Plaintiffs challenge the Fisheries Service's issuance of the biological opinion at issue here for failing to adequately analyze and address effects on federally protected species and critical habitats from the construction, operation, and decommissioning of two unprecedented crude oil export terminals, SPOT and GulfLink, in violation of the Administrative Procedure Act and the ESA.

On October 9, 2025, the Court held a scheduling conference, after which it entered a scheduling order on October 10, 2025 (ECF No. 54). The scheduling order largely adopted the

---

[1] Defendants have agreed to add at least 62 currently missing documents to the record (ECF No. 65-4). If the Court denies Plaintiffs' motion to complete or supplement the record, Defendants will still be completing the record with these documents.

deadlines the parties had proposed in a filing submitted on September 30, 2025 (ECF No. 50).

On November 19, 2025, Defendants filed a consent motion to amend the scheduling order (ECF No. 54) to extend the deadline for Defendants to lodge the administrative record from January 9, 2026, to January 30, 2026, due to the government shutdown (ECF No. 55). The Court granted Defendants' motion on November 24, 2025 (ECF No. 56).

On January 30, 2026, Defendants lodged the administrative record (ECF No. 58). On February 27, 2026, Plaintiffs filed a consent motion to amend the scheduling order to extend the deadline for Plaintiffs to file a motion to complete or supplement the record by 10 days (ECF No. 60). The Court granted Plaintiffs' motion on March 4, 2026 (ECF No. 61). On March 12, 2026, Plaintiffs filed a motion to complete or supplement the record (ECF No. 62).

On March 19, 2026, Defendants filed a consent motion for an extension of time to respond to Plaintiffs' motion to complete or supplement the record (ECF No. 63). On March 26, 2026, the Court granted Defendants' motion (ECF No. 64).

Briefing on Plaintiffs' motion to complete or supplement the record was completed on April 23, 2026 (ECF No. 67). Under the current scheduling order, Plaintiffs' motion for judgment on the record is due no later than 45 days after (1) either the entry of an order denying Plaintiffs' motion or (2) any completion or supplementation of the record (ECF No. 54). Defendants' memorandum in opposition to Plaintiffs' motion for judgment on the record and cross-motion for judgment on the record is due 45 days after Plaintiffs' opening brief is filed (ECF No. 54). Plaintiffs' reply brief is due 30 days after Defendants' brief is filed (ECF No. 54).

During the course of the above-described proceedings, news reports consistently indicated that the two deepwater port projects were not ready for construction. *See, e.g.*, Decl. of Rumela Roy ("Roy Decl."), Ex. 1 ("[T]he timeline to coming on stream remains unclear even for

3

SPOT and Texas GulfLink. … Texas GulfLink … only received its Record of Decision from the US Maritime Administration in February. Multiple critical licenses are still necessary before construction."). To Plaintiffs' knowledge, neither SPOT nor GulfLink, nor the relevant federal agencies, had publicly indicated that construction of either terminal would be imminent.

However, on May 5, 2026, Sentinel Midstream LLC (the parent company of Texas GulfLink, LLC) announced "the commencement" of the GulfLink port, stating that GulfLink will "immediately begin construction of its deepwater crude oil export terminal." Roy Decl., Ex. 2. A May 6, 2026, news article noted that a Sentinel Midstream representative had further indicated that "the company will begin excavation activities soon." Roy Decl., Ex. 3. But the company did not explain what this commencement entailed and did not provide a timeline for construction of the terminal.

On June 1, 2026, counsel for Texas GulfLink, LLC represented to the Fifth Circuit that the GulfLink project had received a license from the Maritime Administration as well as the state and federal permits necessary to move forward with the construction phase of the project.[2] Counsel for GulfLink further stated: "At present, we are endeavoring to satisfy a lot of the conditions that are put within [the GulfLink] license. And if all comes to pass, we will look to start construction by the end of the summer at the earliest."[3]

As such, although Plaintiffs do not know and cannot say what the exact timeline for construction on the project will be, it appears that construction on GulfLink could begin by the end of summer 2026 at the earliest.

---

[2] Oral Arg. Tr. 28:19–28:35, *Citizens for Clear Air v. U.S. Dep't of Transportation*, No. 25-60202 (5th Cir. June 1, 2026).
[3] *Id.* at 28:35–28:53.

**ARGUMENT**

Under 28 U.S.C. § 1657(a), a court "shall expedite the consideration of any action" "if good cause therefor is shown." Legislative history indicates that the "'good cause' standard could properly come into play, for example, in a case in which failure to expedite would … deprive the relief requested of much of its value" or in "actions where the public interest in enforcement of the statute is particularly strong." H. Rep. No. 98-985, at 6 (1984). Good cause exists here to amend the scheduling order and expedite briefing and consideration of the motions for judgment on the record.

First, failure to expedite could deprive the requested relief of much of its value. Plaintiffs seek vacatur and remand of the biological opinion governing the construction (as well as operation and decommissioning) of GulfLink (and SPOT) because the Fisheries Service failed to properly analyze effects on ESA-listed species and their critical habitat and arbitrarily determined that the actions would not jeopardize any listed species. If construction activities occur pursuant to this faulty biological opinion, imperiled species and critical habitats will be harmed and their survival and recovery threatened. For example, the loss of even one single Rice's whale—if it were to occur during the construction phase of the project—could lead to the extinction of this species. Am. Compl. ¶ 42, ECF No. 34. Moreover, the longer that construction goes on under this flawed biological opinion, the higher the threat to endangered and threatened species.

Second, the public interest in the enforcement of the ESA is strong, particularly in this case. Congress enacted the ESA in response to the extinction crisis to "provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved, [and] to provide a program for the conservation of such endangered species and threatened species." 16 U.S.C. § 1531(b); *Appalachian Voices v. U.S. Dep't of Interior*, 25 F.4th 259, 264 (4th Cir. 2022) (recognizing that "the [ESA] requires federal agencies to afford first priority to the

5

declared national policy of saving endangered or threatened species" (cleaned up)). The ESA requires each federal agency, in consultation with a consulting agency (here, the Fisheries Service), to "insure that any action authorized, funded, or carried out by such agency … is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of [critical] habitat of such species." 16 U.S.C. § 1536(a)(2). The consultation process, which cumulated here in the biological opinion and incidental take statement, is a central feature of the ESA's framework for protecting endangered and threatened species. *See, e.g.*, *W. Watersheds Proj. v. Kraayenbrink*, 632 F.3d 472, 495 (9th Cir. 2011) (describing 16 U.S.C. § 1536(a)(2) as "[t]he heart of the ESA").

Because the biological opinion's analyses of effects and determination of no jeopardy are arbitrary and capricious, construction activities occurring pursuant to this flawed biological opinion threaten to harm and even devastate the Gulf's imperiled wildlife. Plaintiffs and the public have substantial interest in ensuring that the Fisheries Service issues a well-reasoned biological opinion and adequately-protective incidental take statement, so that already-imperiled species are not further harmed by the construction, operation, and decommissioning of GulfLink and SPOT.

Ultimately, resolving this dispute on an expedited timeline would benefit all interested parties. Expedited briefing and consideration would provide clear legal requirements for the biological opinion and incidental take statement under the ESA. It would also allow parties to ensure that any construction activities set to occur on GulfLink adequately protect endangered and threatened species and critical habitat, in compliance with the ESA.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court amend the scheduling order and expedite briefing and consideration of the parties' motions for judgment on the record.

Respectfully submitted this 18th day of June, 2026.

/s/ Christopher D. Eaton
Christopher D. Eaton (D. Md. Bar 21544)
EARTHJUSTICE
810 Third Ave., Suite 610
Seattle, WA 98104
206-343-7340 Telephone
415-217-2040 Fax
ceaton@earthjustice.org

Rumela Roy (*pro hac vice*)
EARTHJUSTICE
1125 17th St., Suite 1010
Denver, CO 80202
303-623-9466 Telephone
415-217-2040 Fax
rroy@earthjustice.org

Brettny Hardy (*pro hac vice*)
EARTHJUSTICE
180 Steuart St. #194330
San Francisco, CA 94105
415-217-2000 Telephone
415-217-2040 Fax
bhardy@earthjustice.org

*Attorneys for Plaintiffs Healthy Gulf and Texas Campaign for the Environment*

/s/ Kristen Monsell
Kristen Monsell (*pro hac vice*)
CENTER FOR BIOLOGICAL DIVERSITY
1212 Broadway, Ste. 800
Oakland, CA 94612
510-844-7137 Telephone
510-844-7150 Fax
kmonsell@biologicaldiversity.org

*Attorney for Plaintiff Center for Biological Diversity*

/s/ Devorah Ancel
Devorah Ancel (*pro hac vice*)
SIERRA CLUB

7

PO Box 4998
Austin, TX 78765
415-845-7847 Telephone
303-449-6520 Fax
devorah.ancel@sierraclub.org

*Attorney for Plaintiff Sierra Club and Turtle Island
Restoration Network*

8